**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CINCINNATI GLOBAL DEDICATED NO. 2 LIMITED** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:22cv41-HSO-BWR** |
| | § | |
| | § | |
| **1909 E. PASS RD., LLC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [4] TO DISMISS AND DISMISSING PLAINTIFF'S CLAIMS WITHOUT PREJUDICE**

BEFORE THE COURT is a Motion [4] to Dismiss filed by Defendant 1909 E. Pass Rd., LLC, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). The Motion [4] is fully briefed. After consideration of the Motion, the record in this case, and relevant legal authority, the Court finds that the Motion [4] to Dismiss should be granted, and that Plaintiff Cincinnati Global Dedicated No. 2 Limited's claims should be dismissed without prejudice for lack of subject-matter jurisdiction.

I. BACKGROUND

Defendant 1909 E. Pass Rd., LLC ("Defendant" or "1909") owns a shopping center located in Gulfport, Mississippi. *See* Compl. [1] at 4. It insured the structure under a commercial insurance policy (the "Policy") which was subscribed to by Certain Underwriters at Lloyd's, London ("Underwriters"), including Plaintiff Cincinnati Global Dedicated No. 2 Limited ("Plaintiff" or "Cincinnati"). *See id.* at 1. The Policy included a building coverage limit of $2,200,000.00. *See id.*; Policy [1-1] at 6.

According to the Policy, its insurers were those "whose syndicate numbers can be ascertained as . . . set forth" in the Policy. Policy [1-1] at 84; *see id.* at 4 (Schedule of Participating Underwriters at Lloyd's, including Syndicate No. 0318). According to Cincinnati's Complaint, it "contributed 92.1974% of the capital to Syndicate 318 for the 2020 year of account and Syndicate 318 secured 78% of 21% of the risk of Policy." Compl. [1] at 2. Thus, Cincinnati's "total share of the risk on the Policy is 15.1%." *Id.* at 2-3.

In October 2020, Hurricane Zeta damaged Defendant's building, and Defendant submitted a claim for damages caused by the hurricane. *See* Compl. [1] at 1, 4. "Underwriters have issued undisputed payments to 1909 of $1,223,970.01, which represent the actual cash value of covered damage less the applicable deductible." *Id.* at 4. However, Defendant's public adjuster submitted a repair estimate of $3,200,00.00, which Cincinnati disputed based upon its own investigation. *See id.* at 4-5. Defendant's adjuster then "issued a letter invoking the Policy's appraisal provision," but Underwriters took the position "that Mississippi law does not permit an appraisal to determine any issues related to coverage or causation." *Id.* at 5. After Underwriters' third-party administrator invited Defendant to participate in mediation and reiterated its position regarding the appraisal demand, Defendant again demanded appraisal. *See id.*

On February 28, 2022, Cincinnati filed its Complaint [1] for Declaratory Judgment in this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See id.* at 1, 3. According to Cincinnati, it is incorporated under the laws

of England and Wales and maintains its principal place of business in the United Kingdom, and Defendant is a limited liability company whose members are citizens of, and domiciled in, Mississippi. *See id.* at 3. Accordingly, Cincinnati asserts that there is complete diversity of citizenship between the parties and that the amount in controversy requirement is satisfied. *See id.* Cincinnati seeks a declaratory judgment that:

a. 1909's appraisal demand is not appropriate or proper under Mississippi law given the nature of the current disputes;
b. *Underwriters* have paid all amounts owed to 1909 under the Policy's terms, conditions, limitations and exclusions; and
c. *Underwriters* owe no further amounts to 1909.

*Id.* at 7 (emphasis added).

Defendant has filed a Motion [4] to Dismiss pursuant to Rules 12(b)(1) and 12(b)(7). *See* Mot. [4]. It contends that subject-matter jurisdiction is lacking because the Court must consider the citizenship of each "Name" of the syndicate that subscribes to the Policy, as well as the amount in controversy with respect to each Name. *See* Mem. [5] at 6-10. Because Cincinnati has not established that the other Names are of diverse citizenship or that the amount in controversy attributable to each Name exceeds $75,000.00, the Court lacks subject-matter jurisdiction. *See id.* Alternatively, Defendant seeks dismissal for failure to join its mortgage lender in the litigation as a necessary party. *See id.* at 10-11.

Cincinnati responds that it only brought suit on its own behalf, not on behalf of all Underwriters, such that only its citizenship need be considered, *see* Mem. [9] at 1, 3-4, and that no mortgagee is a necessary party under Rule 12(b)(7), *see id.* at

5-6. Cincinnati requests that, if did not plead sufficient facts to establish diversity jurisdiction, it be given leave to amend under Rule 15(a). *See id.* at 6-7.

## II. DISCUSSION

### A. Relevant legal standards

### 1. Dismissal for lack of subject-matter jurisdiction

Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(7) for failure to join a necessary party. *See* Mot. [4]; Mem. [5]. The burden of proof for a Rule 12(b)(1) motion to dismiss rests with the party invoking the Court's jurisdiction. *See Haverkamp v. Linthicum*, 6 F.4th 662, 668 (5th Cir. 2021). A federal district court may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022) (quotation omitted). In this case, the Court will resolve Defendant's Motion [4] to Dismiss based upon the Complaint alone. *See id.*

Pursuant to 28 U.S.C. § 1332(a), a federal court has original subject-matter jurisdiction where the matter in controversy exceeds $75,000.00 and is between citizens of different states or is between citizens of one state and citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a). Section 1332(a) mandates "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*,

546 U.S. 81, 89 (2005). The United States Supreme Court has held that diversity jurisdiction in a suit by or against an artificial entity depends upon the form of the entity. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990). A limited liability company's citizenship is determined by that of all of its members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "So, to establish diversity jurisdiction, a party must specifically allege the citizenship of every member of every LLC." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (quotation omitted).

2. Dismissal for failure to join a party

Rule 12(b)(7) provides for dismissal due to a party's "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Determining whether an entity is an indispensable party is a highly-practical [and] fact-based endeavor . . . ." *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). Making this determination involves a two-step inquiry. *See id.* A court first must "determine whether the party should be added under the requirements of Rule 19(a)," with the "the party advocating joinder" bearing "the initial burden of demonstrating that a missing party is necessary." *Id.* "[A]fter an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.* (quotation omitted). If a necessary party cannot be joined without destroying subject-matter jurisdiction, a court "must then determine whether that person is

'indispensable,' that is, whether litigation can be properly pursued without the absent party," considering the factors set forth in Rule 19(b). *Id.* at 629.

B. Whether the Court possesses subject-matter jurisdiction

1. Lloyd's structure

The Complaint asserts that Cincinnati is a citizen of a foreign state, and that Defendant is a citizen of Mississippi, such that there is complete diversity of citizenship. *See* Compl. [1] at 3. The dispute here is whether, in addition to Cincinnati's citizenship, the citizenship of all of the Lloyd's Underwriters, or "Names," who subscribe to the Policy should be considered to assess whether complete diversity of citizenship exists. *See, e.g.,* Mem. [5]; Mem. [9]. Defendant argues that all Names must be considered, which would destroy subject-matter jurisdiction, while Cincinnati maintains that only its citizenship is relevant. *See, e.g.,* Mem. [5]; Mem. [9]. The seminal case on this issue in the Fifth Circuit is *Corfield v. Dallas Glen Hills LP*, where the question was dubbed "the Lloyd's citizenship conundrum." 355 F.3d 853, 859 (5th Cir. 2003).

The Fifth Circuit has described the Lloyd's entity as one that operates and controls an insurance market for buying and selling of insurance risk among its members. *See id.* at 857.

> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment . . . . Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an

underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.

Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. The Syndicates themselves have been said to have no independent legal identity.

* * *

In practice, since many Names through their respective Syndicates are liable on a Lloyd's policy, the active underwriter from one of the underwriting Syndicates is designated as the representative of all the Names on the policy. This single underwriter, called the "lead" underwriter on the policy, is usually the only Name disclosed on the policy with all other Names remaining anonymous. The lead underwriter is typically the first to subscribe to the policy and typically assumes the greatest amount of risk . . . .

In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume. The insured does not have to sue each Name individually however to collect on their individual promises because the typical Lloyd's policy contains a clause providing that "any [Name] can appear as representative of all [Names]." Thus, when litigation ensues over a Lloyd's policy, the only named Lloyd's party appearing in the litigation is usually the lead underwriter on the policy. The standard Lloyd's policy states "that in any suit instituted against any one of [the Names] upon this contract, [all the Names] will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." Thus, each Name is contractually bound on an individual basis to the insured to adhere to any adverse judgment reached in the suit notwithstanding that only one Name participates in the litigation as a named party.

*Id.* at 857-59 (emphasis removed) (citations omitted).

In *Corfield,* the operative complaint for declaratory judgment alleged that Liberty, the lead underwriter on that Lloyd's policy, was suing on "only on its own behalf as the lead underwriter on the Policy," and there was no allegation that it was suing in any type of representative capacity on behalf of the other underwriters. *Id.* at 856 (emphasis removed). The plaintiff underwriter in that case insured 32.79 percent of the risk, the most of any other Name on the policy. *See id.* at 859. In resolving whether the other Names' citizenship should be considered for diversity purposes, the Fifth Circuit turned to caselaw from other circuits, particularly the Second Circuit. *See id.* at 860-63 (discussing *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998) ("*Squibb I*"); *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154 (2d Cir. 2001) ("*Squibb II*")).

In *Squibb I*, the Second Circuit determined that whenever the lead underwriter on a Lloyd's policy is sued in a representative capacity, a court must look to the individuals being represented rather than their representative. *See Squibb I,* 160 F.3d at 931, 937-38 (citing *N. Tr. Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir. 1990)). But when the lead underwriter is sued individually and not as a representative of other Names, the other Names are considered dispensable parties whose citizenship need not be considered. *See id.* at 936-38.

*Squibb I* recognized that the contractual provision obligating each Name to abide by a judgment rendered against any other Name runs vertically between the insured and each Name, resulting in "a series of independent bilateral contracts

from insurer to insured," as opposed to "a set of intertwining agreements uniting the Names in a manner analogous to a limited partnership." *Squibb I*, 160 F.3d at 937. This distinguished the situation in *Squibb I* from that in the Supreme Court's decision in *Carden* that the citizenship of every partner in a limited partnership must be considered for diversity purposes. *See id.* (citing *Carden*, 494 U.S. at 187-88 n. 1).

In an attempt to "save diversity jurisdiction," the parties in *Squibb I* sought to add another underwriter individually and to dismiss the original underwriter in his representative capacity, though retaining him in his individual one. *Id.* at 935. The Second Circuit remanded for the district court to determine in the first instance whether "such steps, if feasible, would suffice to preserve jurisdiction," *id.* at 936, by considering whether the additional underwriter could be added as a party, whether the underwriters could be sued in only their individual capacities, whether the suit should be recast as a Rule 23.2 class action, and whether the amount in controversy was satisfied, *id.* at 936-39.

On remand, the district court concluded that diversity jurisdiction existed on a variety of grounds, including the dismissal of the original Name and the substitution of the other underwriter in his individual capacity. *See Squibb II*, 241 F.3d at 160. The district court determined that "there would be no prejudice to any of the other defendants from dropping the 'represented' parties," as the absent Names would be bound by a judgment against the Names in their individual capacities. *Id.* at 161. The Second Circuit affirmed and held that, with the

amendment, diversity jurisdiction over the suit had been established. *See id.* at 164.

In *Corfield*, the Fifth Circuit noted that the underwriter there was suing only in its individual capacity as lead underwriter on the policy, which was the "exact procedural posture suggested by the Second Circuit in *Squibb I* and ultimately approved by the Second Circuit in *Squibb II*." *Corfield*, 355 F.3d at 863. The Fifth Circuit found "the Second Circuit's approach to be based upon sound reasoning." *Id.* "The fact that the Names' contract with the insured and the rules of Lloyd's are structured such that the other Names are affected by the judgment against a single Name does not bring those other parties before the court or make them relevant for the citizenship determination." *Id.* at 864. Thus, the Fifth Circuit concluded that when an individual Name sues only on its own behalf, the citizenship of the remaining Names on a policy who are not parties to the case is irrelevant. *See id.*

2. <u>Cincinnati's Complaint</u>

Pursuant Federal Rule of Civil Procedure 10(a), a complaint must contain "a caption with the court's name, a title, a file number, and a Rule 7(a) designation,"[1] and "[t]he title of the complaint must name all the parties . . . ." Fed. R. Civ. P. 10(a). Rule 8(e) provides, however, that "[p]leadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and "[a]lthough the caption may serve as a guide,

[1] Rule 7(a) lists which "pleadings are allowed," including a "complaint." Fed. R. Civ. P. 7(a).

courts look to the body of the complaint to determine the parties," *Abecassis v. Wyatt*, 902 F. Supp. 2d 881, 911 (S.D. Tex. 2012) (collecting cases). "[T]he caption is not determinative as to the identity of the parties to the action, the district court's personal jurisdiction over the defendant, or its subject matter jurisdiction over the claims." 5A Fed. Prac. & Proc. Civ. § 1321 (4th ed.) (citations omitted) (collecting cases). An amendment may be made under Rule 15 "to correct technical defects in the caption when that is thought necessary," as a defective caption "is merely a formal error." *Id.*

The Complaint [1] in this case does not name any other Underwriter as a plaintiff; however, it does not specifically state that Cincinnati brings suit in only its individual capacity. *See* Compl. [1]. The caption of the Complaint [1] identifies only Cincinnati, but the body or substance of the Complaint [1] itself plainly

> requests a declaratory judgment from this Court that:
> a. 1909's appraisal demand is not appropriate or proper under Mississippi law given the nature of the current disputes;
> b. *Underwriters* have paid all amounts owed to 1909 under the Policy's terms, conditions, limitations and exclusions; and
> c. *Underwriters* owe no further amounts to 1909.

*Id.* at 7 (emphasis added). Based upon the relief requested, Cincinnati seeks a declaration not only for itself, but on behalf of other Underwriters whose citizenship has not been pled or otherwise identified. *See id.*

The Second Circuit recognized in *Squibb I* that the contractual provision obligating each Name to abide by a judgment rendered against any other Name runs vertically between the insured and each Name, rather than horizontally

between Names, which results in "a series of independent bilateral contracts from insurer to insured." *Squibb I*, 160 F.3d at 937. However, in requesting relief on behalf of other Names, Cincinnati's Complaint [1] appears to be effectively seeking a judgment on not just one bilateral contract between it and Defendant, but on all bilateral contracts between each Underwriter and Defendant. *See* Compl. [1] at 7.

Although Cincinnati asserts in its briefs that it is bringing this case only on its own behalf, this argument is belied by its request for relief pled in its Complaint [1], which appears to make de facto representative claims. *See id.* This distinguishes this case from *Corfield*, *Squibb I*, and *Squibb II*. In *Corfield*, the Fifth Circuit reasoned that "the fact that the case will determine the rights of non-diverse litigants through collateral estoppel or preclusion does not affect jurisdiction," *Corfield*, 355 F.3d at 861, but here the relief Cincinnati requests would adjudicate the rights of non-diverse litigants in this case, without need for subsequent resort to collateral estoppel, *see id.*[2] If Cincinnati were to prevail in this case, there would be a declaratory judgment supplying the ruling sought as to

---

[2] *Corfield* also cited its prior decision *Aetna Casualty & Surety Co. v. Iso–Tex, Inc.*, 75 F.3d 216 (5th Cir. 1996), where a single member of an unincorporated association filed suit "for itself and all other members of such association." *Aetna*, 75 F.3d at 218. The Fifth Circuit recognized that if the association itself were named as a plaintiff it would lack jurisdiction, but it held that "the position of the members of [the association] for jurisdictional purposes is analogous to that of unnamed class members: their citizenship is disregarded." *Id.* Here, Cincinnati has made no argument that this case is analogous to a class action, *see* Resp. [8]; Mem. [9], nor did Cincinnati bring this case as a class action, *see* Compl. [1]; *see also McAuslin v. Grinnell Corp.*, No. CIV.A.97-775, 2000 WL 1059850, at *9 (E.D. La. Aug. 1, 2000) (noting that "[n]otwithstanding the apparent advantages of class certification, the Fifth Circuit has never addressed whether a district court can, or should, recast a lawsuit that was not originally filed as a class action in order to preserve jurisdiction," but finding "plaintiffs' initial election not to file a class action to be dispositive").

each and every Name's vertical contract with their insured. Simply put, Cincinnati is in effect pursuing a declaratory judgment not simply only on its own behalf, but on behalf of every Name subscribing to the Policy. *See* Compl. [1]; *Squibb I,* 160 F.3d at 931, 937-38.

3. Jurisdictional analysis

Federal courts are courts of limited subject-matter jurisdiction. *See, e.g., Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022). "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1067 (5th Cir. 1984). Here, in substance what Cincinnati has brought is a representative action; yet it has not identified the citizenship of any other Name. *See* Compl. [1]. From the face of the Complaint, Cincinnati and Defendant are the only two parties and are of diverse citizenship. *See id.*; *see also* Fed. R. Civ. P. 10(a).

The parties have not pointed the Court to any controlling authority on all fours with a case such as this one where a Name is effectively bringing a de facto suit in a representative capacity. However, allowing Cincinnati to bring a suit ostensibly filed in its individual capacity, while actually seeking relief on behalf of all Underwriters as if it had filed suit in a representative capacity, would circumvent the narrowly proscribed boundaries of § 1332(a) and Fifth Circuit authority. *See id.* Construing the body of the Complaint "so as to do justice," Fed.

R. Civ. P. 8(e), one could reasonably argue that all Underwriters are de facto Plaintiffs, *see Abecassis*, 902 F. Supp. 2d at 911.

Cincinnati bears the burden of demonstrating subject-matter jurisdiction exists, but it has not pled the citizenship of any other Name subscribing to the Policy, *see Haverkamp*, 6 F.4th at 668, and if all Names' citizenship must be considered to determine subject-matter jurisdiction, Cincinnati has not sufficiently established that there is complete diversity of citizenship, *see id.*

The cases cited by the parties involved scenarios at two ends of a spectrum, complaints either plainly brought against or by a Name individually, or those against or by a Name in a representative capacity. *See, e.g., Corfield*, 355 F.3d at 85; *Squibb II*, 241 F.3d at 160; *Squibb I,* 160 F.3d at 931, 937-38. The situation here lies somewhere between these two extremes. At best, the present record creates doubt whether subject-matter jurisdiction exists, and this doubt must be resolved against a finding of jurisdiction. *See Boelens*, 748 F.2d at 1067. In sum, Cincinnati has not carried its burden of demonstrating that the Court possesses subject-matter jurisdiction. *See Haverkamp*, 6 F.4th at 668.[3]

---

[3] The Court also questions whether Cincinnati has sufficiently established Defendant's citizenship for diversity purposes. Citizenship must be "distinctly and affirmatively alleged," and "[f]ailure adequately to allege the basis for diversity jurisdiction mandates dismissal." *Stafford v. Mobil Oil Corp*., 945 F.2d 803, 805 (5th Cir. 1991) (quotation omitted). For a limited liability company such as Defendant, a plaintiff "must specifically allege the citizenship of every member." *MidCap Media Fin., L.L.C.*, 929 F.3d at 314 (quotation omitted). The Complaint states that "upon information and belief, each of 1909's members are a citizen of, and domiciled in, Mississippi." Compl. [1] at 3. It does not identify any member of Defendant or specifically allege each member's citizenship. *See id.*; *MidCap Media Fin., L.L.C.*, 929 F.3d at 314. To the extent any member is an artificial entity, Cincinnati has not identified of what other state such member may be a citizen, nor has it traced its citizenship "down the various organizational layers" as required. *Mullins v.*

C. Cincinnati's request to amend

In its Memorandum [9] in opposition to Defendant's Motion [4], Cincinnati requests that, if it has not pled sufficient facts to establish diversity jurisdiction, it be permitted leave to amend under Rule 15(a). *See* Mem. [9] at 6-7. No amended complaint was filed as a matter of course within 21 days of Defendant's Rule 12(b) Motion [4], *see* Fed. R. Civ. P. 15(a)(1), nor has Cincinnati filed a separate motion to amend as required by the Court's Local Rules, *see* L.U. Civ. R. 7(b) ("Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by [Rule 7]" of the Local Uniform Civil Rules of this Court.). Cincinnati has also not submitted a proposed amended complaint, further in contravention of the Local Rules. *See* L.U. Civ. R. 7(b)(2) ("If leave of court is required under Fed. R. Civ. P. 15, a proposed amended pleading must be an exhibit to a motion for leave to file the pleading . . . ."). To the extent Cincinnati's brief requests leave to amend, such request will be denied for failure to comply with the Court's Local Rules. *See* L.U. Civ. R. 7(b).

III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

---

*TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009). For this reason as well, diversity of citizenship has not been sufficiently established. In light of the Court finds subject-matter jurisdiction lacking, it need not address Defendant's argument that its mortgage lender is a required party. *See* Mem. [5] at 11.

Defendant's Motion [4] to Dismiss will be granted, and Cincinnati's claims will be dismissed without prejudice.[4]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [4] to Dismiss filed by Defendant 1909 E. Pass Rd., LLC, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Cincinnati Global Dedicated No. 2 Limited's claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 19th day of October, 2022.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

[4] To the extent it were determined that original subject-matter jurisdiction does exist, the Court also questions whether this case should nevertheless be dismissed for failure to join required parties. *See* Fed. R. Civ. P. 12(b)(7). Analogous to the question of whether the other Names are required parties under Rule 19(a)(1), Cincinnati has argued that the citizenship of other Names is irrelevant because "under the Policy's Service of Suit clause, all subscribing Underwriters agree 'that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.'" Mem. [9] at 5 (quoting Policy [1-1] at 72). However, the plain language of the Policy provision quoted by Cincinnati applies only to a lawsuit "instituted *against* any one of them," and does not speak to lawsuits instituted *by* one of them, as is the case here. Mem. [9] at 5 (quoting Policy [1-1] at 72) (emphasis added). Nor has Cincinnati cited any other provision that demonstrates that all Names have delegated their right to bring a declaratory judgment action to a proxy name. *See id.*